912 N.E.2d 393 (2009)
In the Matter of T.D., a Minor Alleged To be a Delinquent Child,
Indiana Department of Child Services, Appellant-Petitioner,
v.
T.D., a Minor Child, and St. Joseph County, Indiana, Probate Court and Hon. Peter J. Nemeth, Judge, Appellees-Respondents.
No. 71A04-0906-JV-312.
Court of Appeals of Indiana.
August 28, 2009.
Robert J. Henke, Indiana Dept. of Child Services, Indianapolis, IN, Attorney for Appellant.
Elizabeth A. Hardtke, St. Joseph Cty. Public Defender Dept., South Bend, IN, Attorney for T.D., Minor Child.
James A. Masters, Nemeth, Feeney, Masters & Campiti, P.C., South Bend, IN, Attorney for St. Joseph Probate Court and Hon. Peter J. Nemeth, Judge.

OPINION
MAY, Judge.
The Indiana Department of Child Services ("IDCS") seeks expedited review, *394 pursuant to Indiana Appellate Rule 14.1, of the St. Joseph Probate Court's modified dispositional order placing T.D., a juvenile adjudicated to be a delinquent, in an out-of-state shelter care facility contrary to the IDCS's placement recommendation. We affirm.

FACTS AND PROCEDURAL HISTORY
Sixteen-year-old T.D. has a significant history of drug abuse and juvenile offenses for truancy, being ungovernable, and running away. In November 2008, T.D. was on probation for truancy when the State filed a delinquency petition alleging she committed burglary, a class B felony if committed by an adult, and theft, a class D felony if committed by an adult. On November 24, 2008, an initial hearing on the delinquency petition was held, and T.D. denied the allegations. The matter was set for trial, and T.D. was released to her grandmother and placed on electronic monitoring.
On March 3, 2009, T.D. entered a plea agreement wherein she admitted to the underlying theft charge and the State dropped the burglary charge. A dispositional hearing was held on April 21, 2009, and the trial court adopted the Probation Department's recommendation that T.D. be placed on strict and indefinite probation. The order required T.D. to successfully complete a number of services including electronic home monitoring, substance abuse testing and treatment, and the Central Academy/Day Reporting Program. It awarded T.D.'s grandmother temporary custody of her.[1]
On April 22, 2009, T.D. skipped classes and was suspended from school for two days. On April 24, 2009, her urine screen tested positive for marijuana and cocaine. An emergency modification hearing was held on April 27, 2009, after which T.D. was ordered removed from her grandmother's home and temporarily detained at the St. Joseph County Juvenile Justice Center. A modification hearing on the dispositional order was set for May 12, 2009.
On May 7, IDCS received a copy of the Probation Department's recommendation that T.D. be placed at Forest Ridge Youth Services ("Forest Ridge"), a licensed residential substance abuse treatment program for adolescent girls in Estherville, Iowa. IDCS did not agree with the recommendation and filed a Consideration Report with the trial court on May 12, 2009. In its report, IDCS recommended that T.D. be placed in one of two Indiana residential facilities: Bashor Children's Home or White's Residential Alcohol and Drug Treatment Program. IDCS emphasized the importance of family involvement with T.D.'s recovery and the closer proximity of both campuses to T.D.'s grandmother's home. The Consideration Report indicated the Forest Ridge program was not appropriate for T.D. because residential substance abuse treatment is "essential for substance abusers[,] especially [T.D.,] who is genetically predisposed" and that while Forest Ridge "provides substance abuse education" it does not provide "substance abuse treatment, education, prevention and relapse maintenance." (Appellant's App. at 24.)
Following several continuances, the modification hearing commenced on May 26, 2009. The Probation Department offered its own Consideration Report, *395 which was admitted into evidence. It outlined the differences between the Forest Ridge program and the Indiana programs IDCS recommended. In its Consideration Report, the Probation Department stated it had analyzed but disagreed with IDCS's alternative placement recommendations for T.D. Specifically, the Probation Department indicated Forest Ridge is a licensed substance abuse treatment program, that IDCS's analysis did not consider the extent of T.D.'s Oppositional Defiant Disorder that underlies her substance abuse issues, that Bashor did not currently have a bed available for T.D., and that placement at White's would require T.D.'s grandmother, as custodian, to travel 85 miles to White's campus in order to attend weekly sessions. The Grandmother would likely be unable to do so on a regular basis. The Probation Department concluded the Forest Ridge program, which includes bi-weekly video therapy sessions and intensive therapy weekends every four months at no expense to the parent or guardian, would be more convenient for the family and effective for T.D. Additional evidence and testimony supporting the Probation Department's placement recommendation was admitted during the modification hearing.
On May 28, 2009, the court placed T.D., who was still being held at the St. Joseph County Juvenile Justice Center, in the Forest Ridge program.

DISCUSSION AND DECISION
Indiana Appellate Rule 14.1 provides IDCS with an avenue for expedited interlocutory review of a dispositional order in both delinquency and child in need of services ("CHINS") cases where the order for services or out-of-home placement is made in contravention of IDCS's recommendations to the court.
Our Indiana Supreme Court has recently stated the standard of review in 14.1 Expedited Appeals:
[O]nce the juvenile court has appropriately considered the [IDCS] recommendations in light of the relevant evidence and reached a contrary conclusion, the appellate function is governed by Indiana Trial Rule 52, which states that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."
In re T.S., 906 N.E.2d 801, 804 (Ind.2009). Thus, our review is two-tiered, considering first whether the evidence supports the findings and, second, whether the findings support the judgment. Id.; see also Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind.2005) (applying this standard to the termination of parental rights).
A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In re D.D., 804 N.E.2d 258, 265 (Ind.Ct.App.2004), trans. denied sub nom. Peterson v. Marion County OFC, 822 N.E.2d 970 (Ind.2004). A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Bester, 839 N.E.2d at 147. Thus, if the evidence and inferences therefrom support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d 204, 208 (Ind.Ct.App.1999), trans. denied sub nom. Swope v. Noble County Office of Family and Children, 735 N.E.2d 226 (Ind.2000), cert. denied 534 U.S. 1161, 122 S.Ct. 1197, 152 L.Ed.2d 136(2002).
After considering the recommendations from both IDCS and the Probation Department, along with other evidence, the *396 trial court rejected the IDCS recommendations and instead followed the recommendation of the Probation Department to place T.D. at Forest Ridge. The trial court issued a dispositional order that contained specific written findings and conclusions acknowledging IDCS did not approve of the Probation Department's placement recommendation, yet nevertheless finding IDCS's alternative recommendations "[u]nreasonable based on the facts and circumstances of the case" and "[c]ontrary to the welfare and best interests of [T.D.]" (Appellant's App. at 2). The trial court found the out-of-state placement in a facility that was not a secure detention facility was appropriate because there was no comparable home or facility with adequate services in Indiana. (Id.)
The trial court based its dispositional decision on a number of factors including Forest Ridge's rural setting, success rate in the treatment of adolescent girls, per diem fee, family counseling services, and current bed availability. The dispositional order was therefore consistent with Ind. Code § 31-37-18-9(b), which provides that if IDCS does not concur with the probation officer's recommendation, and the trial court does not follow IDCS's alternative recommendation, the trial court shall accompany its dispositional decree with written findings that IDCS's recommendations are either "unreasonable" based on the circumstances of the case or that they are "contrary to the welfare and best interests of the child." See id.
Because the placement is both contrary to IDCS's recommendation and is an out-of-state placement, Ind.Code § 31-37-19-3 is implicated. That section provides a trial court may not place a delinquent child in a non-secure detention facility outside of Indiana unless it makes written findings, based on clear and convincing evidence, that the out-of-state placement is appropriate because there is no "comparable facility with adequate services located in Indiana. . . ." Ind.Code § 31-37-19-3(b)(2)(A).
In arriving at its decision to place T.D. at Forest Ridge, the trial court found:
[T.D.] is in need of supervision, care, treatment and services which are NOT available in the local community.
[T.D.] is in need of services beyond those which can be provided through probation services.
* * * * * *
2. Forest Ridge offers a high quality of treatment which matches the needs of the child.
3. Forest Ridge conducts a residential treatment program for girls with conduct disorders.
5. Forest Ridge has a success rate of 86% with the children placed there in 2008; an 80% success rate over the past five years.
6. The per diem at Forest Ridge is $208.00 compared to $224.00 at the facility recommended by [I]DCS.
7. The facility recommended by [I]DCS does not have a bed available at this time.
8. [T.D.'s] custodian is in favor of the placement at Forest Ridge.
9. An aftercare program is provided by Forest Ridge at no extra charge.
10. Forest Ridge provides transportation and accommodations for parents to visit their child at no extra charge.
* * * * * *
Institutional care at Forest Ridge is in the best interest of [T.D.] and will not produce undue hardship.
This Modification Order is consistent with the safety and best interest of the child and is the least restrictive and *397 most appropriate setting available close to the parents' home, least interferes with the family's autonomy, is least disruptive of family life, imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.
(App. at 2-3.) Our review of the record reveals that clear and convincing evidence supports these findings, which in turn support the trial court's ultimate decision to place T.D. in the Forest Ridge program.
During the modification hearing, T.D.'s probation officer, Jodi Magalski, testified that the Probation Department recommended T.D. be placed in the Forest Ridge program. Public Defender Michelle Laux informed the court that "grandma and [T.D.], and I as a public defender, all agree with the placement at Forest Ridge." (Tr. at 9.) There was evidence that, contrary to IDCS's assertions in its Consideration Report, Forest Ridge did have a substance abuse treatment program for chemically dependent teenagers.
Nikki Lawson, Substance Abuse Program Director at Forest Ridge, testified via satellite television that Forest Ridge was a "licensed outpatient substance abuse treatment facility" with three levels of care including "intensive outpatient" care, "extended outpatient" care, and "continuing care," which includes relapse prevention. (Id. at 6.) She explained that Forest Ridge's substance abuse treatment program uses a range of curriculums from the "matrix model" to "smoking cessation programs" to a "[twelve]-step facilitations guide" (Id.) Finally, Magalski indicated Forest Ridge has a "strong aftercare program" that is "streamlined" into the rest of the adolescent's aftercare services once she returns to her home community. (Id. at 6-7.)
Sherri Williams, Forest Ridge Admissions Director, testified via satellite television. She told the court that Forest Ridge, unlike Bashor and White's, provides free transportation for "parent or guardian visits to [the Forest Ridge campus] for a weekend [of] intensive family therapy" every four months, as well as three phone contacts a week and video conferencing sessions every other week that alternate between "family therapy" and "family visit" purposes. (Id. at 8-9.) Williams stated "There needs to be dramatic interruption in [T.D.'s] life where she is able to be in a safe environment to reconsider and rebuild her thinking and her feelings and her actions. And the distance factor, while it is difficult, does seem to work at the girls' best interest[s]" by motivating them to "work through the program[,] to focus[,] and to work toward going back to [their] family." (Id. at 9.) She testified Forest Ridge would conduct extensive testing to determine whether T.D. will be able to get her high school diploma or G.E.D. and how to best create an educational program for her. (Id. at 7.) In addition, the Probation Department's Consideration Report indicates that Forest Ridge's year-round on-site educational program allows 22.5 credits to be earned within a twelve-month period, thus providing an opportunity for T.D., who is sixteen years old and currently has no credits toward a high school diploma, to "catch up to her same-age peers and earn a high school diploma." (Appellant's App. at 16.)
After reviewing IDCS's and the Probation Department's Consideration Reports and considering the evidence and testimony admitted during the modification hearing, the trial court concluded IDCS's alternative placement recommendations were contrary to T.D.'s best interests. The order placing T.D. at Forest Ridge was supported with ample evidence of T.D.'s history *398 of drug abuse, her diagnosed mental disorders, her family relationships, her wishes and those of her grandmother, and the Probation Department's formal recommendation. We cannot conclude the trial court committed clear error in placing T.D. at Forest Ridge.[2]
Affirmed.
HOFFMAN, SR. J., and BRADFORD, J., concur.
NOTES
[1] The grandmother was awarded temporary custody of T.D. because T.D.'s mother was incarcerated on a parole violation and various other charges. T.D.'s biological father, who was never married to T.D.'s mother and has not been involved in T.D.'s life, does not participate in this appeal.
[2] At the time the trial court issued its modified dispositional order placing T.D. in the Forest Ridge program, Indiana law provided that IDCS was responsible for the payment of costs and expenses incurred by or on behalf of a child for an out-of-home placement ordered by a juvenile court and implemented after entry of a dispositional decree or modification order. This was true even if the placement was contrary to the IDCS recommendation, unless or until the trial court modified its dispositional order or IDCS prevailed on appeal, so long as the court made written findings that the placement was an emergency required to protect the health and welfare of the child. See Ind.Code § 31-37-18-9(d) and (e). This rule also applied to out-of-state placements if certain additional conditions were met. See Ind.Code §§ 31-37-19-3 and 41-40-1-2(1) (2008).

But during the 2009 Special Session of the Indiana General Assembly, Indiana Code Section 31-40-1-2(1) was amended. It now reads: "The [IDCS] is not responsible for payment of any costs or expenses for housing or services provided to or for the benefit of a child placed by a juvenile court in a home or facility located outside Indiana, if the placement is not recommended or approved by the director of the department or the director's designee." (Emphasis added.) This amendment shifts from IDCS to the counties the burden of payment for housing and services provided to or for the benefit of a child placed in a facility located outside of Indiana without prior approval by the IDCS director or the director's designee, notwithstanding the court's determination regarding the best interests of the child. Because the change made to Indiana Code Section 31-40-1-2 did not become effective until July 1, 2009, it is inapplicable to the case before us.